**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **ESTHER R. PADILLA,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 14-cv-2102** |
| | : | |
| **STATE FARM MUTUAL** | : | |
| **AUTOMOBILE INSURANCE** | : | |
| **COMPANY,** | : | |
| **Defendant.** | : | |

## M E M O R A N D U M

**Stengel, J.**                                                                 **July 8, 2014**

An injured driver brings this diversity action against her automobile insurer based on a partial denial of her underinsured motorist benefits. She asserts a breach of contract claim along with a bad faith claim under Pennsylvania law. The insurer moves to dismiss the bad faith claim under Rule 12(b)(6). I will deny this motion and allow the claim to proceed to discovery.

### I.        BACKGROUND

On September 20, 2011 at around 1:15 p.m., Yolanda Mateo-Placido's car struck the front driver's side of Plaintiff Esther Padilla's car as she proceeded through the intersection of North Front and Buttonwood Streets in Reading, Pennsylvania. Mateo-Placido ran a red light. She was also an underinsured motorist.

As a result of the accident, the plaintiff suffered serious injuries to her jaw, head, back, and ribs. Padilla was taken to Reading Hospital and Medical Center's Emergency

Department by ambulance, where she was treated. She received subsequent medical treatment for her injuries, including physical therapy, MRIs, and surgical procedures.

Ms. Mateo-Placido was insured through an automobile insurance policy with State Farm with liability limits of $25,000 per person and $50,000 per occurrence. On June 14, 2012, State Farm offered Padilla $25,000 for her injuries. Ms. Padilla was also insured by State Farm (Policy Number 398 8206-D28-38M). Her policy contained an underinsured motorist coverage provision with limits of $100,000 per person/$300,000 per occurrence stacked times two vehicles for an aggregate total of $200,000 per person/$400,000 per occurrence. Ms. Padilla paid the premiums of this policy timely.

On June 18, 2012, plaintiff's counsel sent State Farm a letter requesting that State Farm waive its subrogation interest and consent to settle with Ms. Mateo-Placido so that Padilla could pursue her underinsured motorist benefits under her own policy. In June 28, 2012, L. Scott Whiteside, the adjuster handling the plaintiff's underinsured motorist claim, waived the subrogation interest and consented to Mateo-Placido's settlement offer of $25,000.

On September 16, 2013, plaintiff's counsel sent State Farm medical records and other information outlining her injuries and treatment. On October 9, 2013, plaintiff's counsel sent additional medical records to State Farm and demanded payment of $200,000 underinsured motorist benefits under the plaintiff's policy. This letter explained why her claim exceeded the combined underinsured motorist coverage limits and the liability limits of Ms. Mateo-Placido.

Subsequently, the plaintiff received a voicemail from the adjuster handling her underinsured motorist claim saying that State Farm was referring her claim to counsel. On October 31, 2013, the plaintiff sent a letter to State Farm requesting an evaluation of her claim.

At the request of State Farm, the plaintiff submitted a statement under oath and an examination by a physician retained by the defendant. On January 27, 2014, plaintiff's counsel requested by letter a written report of this medical examination and again asked for the defendant's evaluation of the plaintiff's claim. After receiving no response, plaintiff's counsel again requested the report and defendant's evaluation of plaintiff's claim in another letter dated February 10, 2014. Plaintiff's counsel sent a third letter requesting the report and evaluation one week later.

Finally, on February 18, 2014, defendant's counsel responded (allegedly to the February 10, 2014 letter) stating that he had still not received the medical examination report and, therefore, could not complete an evaluation of the plaintiff's claim. On February 24, 2014, defense counsel emailed the medical report after plaintiff's counsel faxed another request for it. The report was dated January 27, 2014. Defense counsel still did not provide an evaluation of the plaintiff's claim. On February 27, 2014, defense counsel offered the plaintiff $30,000 to settle her underinsured claim. The plaintiff rejected this offer.

On February 28, 2014, the plaintiff filed this action in the Court of Common Pleas of Berks County. On April 10, 2014, the defendant removed the action to this court based on diversity jurisdiction. The plaintiff is a Pennsylvania resident, while State Farm is an

3

Illinois corporation. The plaintiff alleges one count for underinsured motorist benefits/breach of contract and another count of bad faith. The defendant now moves to dismiss the plaintiff's bad faith claim for failure to state a claim under Pennsylvania law.

## II.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint.[1] Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which she bases her claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564.  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse

---

[1] In deciding a motion to dismiss, the court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  The court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. Id.

v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern

Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain

enough factual matters to suggest the required elements of the claim or to "raise a

reasonable expectation that discovery will reveal evidence of" those elements. Phillips v.

County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at

556).

A court "may dismiss a complaint only if it is clear that no relief could be granted

under any set of facts that could be proved consistent with the allegations." Brown v.

Card Service Center, 464 F.3d 450, 456 (3d Cir. 2006)(quoting Hishon v. King &

Spalding, 467 U.S. 69, 73 (1984)).

## III.    DISCUSSION[2]

The plaintiff alleges that the defendant acted in bad faith by, *inter alia*, delaying

investigation of the plaintiff's claim, offering a settlement that was unreasonable in light

of the facts of the investigation, and failing to provide an evaluation of her claim—

despite multiple requests for such information. The defendant argues that the plaintiff's

factual allegations do not support a finding of bad faith.

Pennsylvania's bad faith statute allows a plaintiff to recover interest, punitive

damages, court costs, and/or attorney's fees if an insurer has acted in bad faith in

---

[2] Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. The plaintiff is a Pennsylvania resident, and the defendant is an Illinois corporation. The case was removed from state court. From the allegations in the complaint, the amount in controversy can be met. See, e.g., St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."). Venue is appropriate because the events giving rise to the claim occurred in this district.

handling a claim.[3] The bad faith statute extends to an insurer's handling of underinsured motorists (UIM) claims. Brown v. Progressive Ins. Co., 860 A.2d 493, 500 (Pa. Super. 2004).[4] In order to show bad faith, a claimant must ultimately establish by clear and convincing evidence both that: 1) "the insurer lacked a reasonable basis for denying benefits;" and 2) "the insurer knew or recklessly disregarded its lack of reasonable basis." Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997)(discussing Terletsky v. Prudential Property and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994).

In deciding whether an insurer had a reasonable basis for denying benefits, a court should examine what factors the insurer considered in evaluating a claim. See Terletsky, 649 A.2d at 688-89. "Bad faith claims are fact specific and depend on the conduct of the insurer *vis à vis* the insured." Condio v. Erie Ins. Exchange, 899 A.2d 1136, 1143 (Pa. Super. 2006)(citing Williams v. Nationwide Mutual Ins. Co., 750 A.2d 881, 887 (Pa. Super. 2000)).

Under the second part of the analysis, mere negligence or bad judgment does not constitute bad faith.[5] Condio, 899 A.2d at 1143. However, recklessness on the part of the

---

[3] Pennsylvania's bad faith statute says:
    In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
        (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
        (2) Award punitive damages against the insurer.
        (3) Assess court costs and attorney fees against the insurer.
42 Pa.C.S.A. § 8371.

[4] See also Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 232 (3d Cir. 1997).

[5] In the insurance context, bad faith is defined as:
    *Insurance*. "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of

insurer can support a finding of bad faith. Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994).  Proof that an insurer's delay in payment was motivated by an improper purpose is not a required element. Klinger, 115 F.3d at 233.[6]

The plaintiff sustained serious injuries after her car was struck by an underinsured motorist who ran a red light. No facts indicate that the plaintiff was at fault. She timely paid premiums for $200,000 worth of UIM insurance so that she would be covered in the event that she was involved in this type of accident. In June 2012, the plaintiff was permitted to settle with the other driver. In September 2013, the plaintiff then forwarded medical records to the defendant and provided additional records of her condition shortly thereafter.[7] The plaintiff and the other driver were both insured by the defendant, leading one to infer that the plaintiff's underinsured claim could be evaluated relatively quickly.

Despite several requests for a settlement offer, the plaintiff was not given any sense of the value of her claim until the end of February 2013.[8] Each request for an

---

a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.
Terletsky, 649 A.2d at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990))(citing Rottmund v. Continental Assurance Co., 813 F.Supp. 1104, 1108-09 (E.D.Pa.1992); Coyne v. Allstate Ins. Co., 771 F.Supp. 673, 677-78 (E.D.Pa.1991)).

[6] See also Greene v. United Services Auto. Ass'n, 936 A.2d 1178, 1191 (Pa. Super. 2007)(adopting the reasoning in Klinger and holding that a "'motive of self-interest or ill will' level of culpability is not a third element required for a finding of bad faith, but it is probative of the second element identified in Terletsky, i.e., 'the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim.'")(citations and quotation marks omitted)).

[7] An insurer's failure to investigate claims adequately may also show bad faith. See O'Donnell ex. Rel Mitro v. AllState Ins. Co., 734 A.3d 901, 906 (Pa. Super. 1999).

[8] "Delay is a relevant factor in determining whether bad faith has occurred…" Kosierowski v. Allstate Ins. Co., 51 F.Supp.2d 583, 588 (E.D.Pa.1999)(citing Klinger, 115 F.3d at 234).

evaluation of her claim was met with further requests for information or was ignored.[9]
The plaintiff alleges that the settlement offer of $30,000 was then unreasonably low
based on the information contained in her medical records and in the independent
evaluation by the insurer's physician. These facts point to the defendant's lack of a
reasonable basis for its delay and partial denial of benefits, along with an inference that
the defendant's behavior was tied to self-interest. Viewing the facts in the light most
favorable to the plaintiff, I find that the plaintiff has alleged a plausible bad faith claim
under Pennsylvania law.[10]

 The defendant supports its arguments with three cases from courts within this
Circuit: Sypeck v. State Farm, Blockus, et al. v. State Farm, and Bremme v. State Farm.
These cases are not helpful and are factually distinguishable.

 In Sypeck, the plaintiff based her bad faith claim simply on the fact that the
insurer's settlement offer appeared unreasonably low. Unlike Ms. Padilla, Sypeck offered
no other facts to support her claims that the insurer failed to investigate her claim or

---

[9] The failure of the insurer to communicate with the claimant may be a basis for a bad faith claim. See Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1232 (Pa. Super. 1994) (citing 3 Appleman, Ins. Law & Practice § 1612 (1967 & Supp.1991)).

[10] "A reasonable basis is all that is required to defeat a claim of bad faith." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir.2004)(citation omitted). The defendant may have had a reasonable basis for delaying the plaintiff's claim or denying her full compensation of her UIM claim. However, the defendant has failed to provide this information to the plaintiff, though several requests for an evaluation of the plaintiff's claim were made over the span of six months. Further discovery would be needed in order to determine whether the defendant acted in bad faith in handling the plaintiff's UIM claim. For this reason as well, dismissal would not be appropriate. See Shaffer v. State Farm Mut. Aut. Ins. Co., No. 1:13–cv–01837, 2013 WL 5638484, at *4 (M.D.Pa. Oct. 15, 2013)(denying a motion to dismiss when facts indicate that the defendant may not have had a reasonable basis for delay);  Clark v. Allstate Ins. Co., No. 13–0271, 2013 WL 1905147, at *5 (E.D.Pa. May 7, 2013)("Allstate's refusal or inability to provide Plaintiff with information on her claim is suspect. Ultimately, reasonable explanations could be provided for all of these factors. This, however, is an issue for summary judgment."); Scarpato v. Allstate Ins. Co., No. 05-05520, 2007 WL 172341, at *5 (E.D.Pa. Jan. 23, 2007)(discussing how the pleadings can offer an inference that the insurer did not have a reasonable basis); Henderson v. Nationwide Mut. Ins. Co., 169 F.Supp.2d 365, 369 (E.D.Pa. 2001)(denying a motion to dismiss based on allegations of failure to investigate adequately, etc.).

delayed settlement.[11] The court dismissed her bad faith claim because it was supported "almost entirely with conclusory allegations using boilerplate language." Sypeck v. State Farm Mut. Auto. Ins. Co., No. 3:12–CV–324, 2012 WL 2239730, at *3 (M.D.Pa. Jun. 15, 2012).

In Blockus, the plaintiffs based their bad faith claim on the fact that the defendant claimed it had not received the plaintiffs' demand package and asked for the package to be resent.[12] The plaintiffs in that case filed suit two months after the defendant did not respond to their first demand.[13] The plaintiffs' complaint did not show repeated efforts by the plaintiffs to communicate with the defendant in order to negotiate a settlement. The court found these facts to be insufficient to establish a bad faith claim but allowed the plaintiffs to amend their complaint.[14]

Bremme dismissed the plaintiff's bad faith claim because the complaint contained "nothing more than unsupported, threadbare assertions that Defendant unreasonably refused to settle Plaintiff's UM claim."[15] The complaint in that case offered no facts regarding the insurer's investigation or proposed settlement of Ms. Bremme's claim.[16] Nonetheless, the court allowed Bremme to amend her complaint.

---

[11] See Sypeck v. State Farm Insurance, 12-cv-324, Doc. No. 1, Ex. 2 (M.D.Pa. 2012).

[12] Defendant's Motion to Dismiss, Doc. No. 4, Ex. C (Blockus, et al. v. State Farm Mut. Auto. Ins. Co., No. 11-cv-125, at *9-10 (M.D.Pa. Mar. 15, 2011)). See also Blockus Compl., No. 11-cv-125, M.D.Pa., Doc. No. 5, Ex. A.

[13] Id.

[14] Id. at *11.

[15] Defendant's Motion to Dismiss, Doc. No. 4, Ex. B (Bremme v. State Farm Mut. Auto. Ins. Co., No. 11-cv-2864, at *4 (E.D.Pa. Sept. 29, 2011)). See also Bremme Am. Compl., No. 11-cv-2864, E.D.Pa., Doc. No. 5, Ex. A.

[16] See Bremme Am. Compl., No. 11-cv-2864, Doc. No. 9 (E.D.Pa. 2011).

Unlike <u>Sypeck</u>, <u>Blockus</u>, and <u>Bremme</u>, Ms. Padilla's complaint offers specific and relevant facts regarding her communication with the defendant about her UIM claim. From the record provided, she has established a plausible bad faith claim. I will deny the defendant's motion and allow the claim to proceed beyond the motion to dismiss.

## IV.    CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the plaintiff's bad faith claim is denied.

An appropriate Order follows.